Henry Epstein, J.
These two actions were tried together since all claims arose out of transactions dealing with the same property and same parties. Keystone Construction Co. is the trade name for Evalyn M. Kaiser, the wife of Dale Kaiser, a building contractor, referred to hereinafter as Kaiser. Kaiser contracted to perform work in renovating the building at 22 East 80th Street, New York City, for Elizabeth M. Manning, a defendant in both actions. Marine Acme Corp. did electrical work on behalf of defendant Manning in the same building. Defendant Taormina Contracting Corp. did plastering work on the same property. All three, Kaiser, Marine and Taormina, have filed mechanic’s liens for the work claimed to have been performed. Marine Acme’s claim was disposed of through compromises early in the trial. Payment of $300 was made by defendant Manning and Kaiser assumed the rest of Marine Acme’s claims in a settlement for $1,600, thus eliminating Marine Acme from the case and including the $1,600 of Marine Acme’s claims in Kaiser’s over-all action against Manning. Marine Acme’s lien was to be lifted. Defendant Manning testified that the plastering by Taormina was satisfactory despite some harsh words concerning Taormina’s work in a written note from Kaiser to Manning. This claim also was by the end of the trial practically disposed of through its assumption by Kaiser as part of his claim against Manning in the agreed amount of $2,650. Thus the trial narrowed down to a controversy between Kaiser and Manning — and a right merry and bitter controversy it became. Since the case was tried without a jury, with findings and conclusions dispensed with, the issue turned on the respective credibility of the witnesses and the support found in the documentary evidence.
Defendant Manning is a woman with extensive business experience in the public relations field. Her careful business habits, evidenced by placing hand-written notes and dates on papers when missing, were apparently abandoned in her dealings with Dale Kaiser. So too, Kaiser, an experienced building contractor, went ahead with a substantial renovating job on Manning’s behalf without a signed agreement, despite many exchanges of estimates, plans, changes, etc. For both Kaiser and Manning this case was probably their exception to sound business habits. Whether it was a case of mutual trust or mutual distrust is difficult to say. The burden of unraveling their bitter dispute therefore falls on this court. On October 16, 1957, Kaiser presented an estimate for work on the premises at a total cost of $15,640 with mention of work on ‘ cellar ceiling ’ ’ and a certificate of occupancy. Manning was unwilling *994 to agree to this expenditure and substantial changes were incorporated in a further revised offer on October 21, 1957. These changed plans called for work, in accordance with architect’s plans, totalling $12,200. This estimate did not mention the “cellar ceiling” nor any certificate of occupancy. It did not include “ lathing ”, “ plastering ”, “ painting ”, “ decorating ”, “ flooring ’ ’, demolition, air-conditioning, removal of debris, etc. It called for payments on the 1st and 15th of each month as the work progressed. This estimate, also in writing, was again not accepted nor signed by Manning. By November 7, 1957 a further total of work was given in the sum of $22,702, with “ separate items ” of $1,650, making a total of $24,352. This, too, was not signed nor “ accepted ” by defendant Manning. Yet during this early period the work had been undertaken, was progressing, and architect’s plans were modified, changed and a whole variety of different work apparently agreed upon between Kaiser and Manning, but with no written agreement.
By November, 1957, Kaiser had progressed work and began to press for interim payments. His first requisition, for $9,000, was on November 15, 1957. The revised plans of the architects were dated December 9, 1957. A revised requisition for work and payment was rendered to Manning by Kaiser on December 4, 1957, showing a total of $14,289 due and $5,000 received on account, leaving a balance of $9,289 due. Further conferences were held and an “itemized requisition” dated December 18, 1957 was rendered showing work done totalling $18,683.50 and a credit for payment of $7,500, leaving an unpaid balance of $11,183.50, Added items “ authorized beyond contract” were listed for a total of $6,914.03 and with new work authorized the “total job ” at a value of $28,056.03. To none of plaintiff Kaiser’s written demands or estimates' did Manning ever reply in writing. Conferences would follow every written episode and the work went on. By January 25, 1958 some sort of arrangement appears to have been reached. Kaiser wrote on that date asking another check for $2500 to pay creditors, also notes for balance of job per our agreement, bearing 6% interest in order that I may discount same ”. Again there was no response, but three notes were given, each for $1,000 and the balance in notes, claimed by Kaiser to have been promised, was never forthcoming. By March 24, 1958, Kaiser gave warning of a mechanic’s lien if the notes and payments promised by Manning were not received. A previous demand was made in writing on March 5, 1958 for the notes and $6,388 due in addi *995 tion. No response from Manning. Total payments by defendant to Kaiser amounted to $15,200 from September 27, 1957 to May 1, 1958 and two notes for $1,000 each, due June 1, and July 1, 1958 which were met — a total paid of $17,200.
In all the period up to August 11, 1958, defendant Manning-had presented no claim or written disagreement with Kaiser. There were numerous excisions and changes made on the estimates and details of work presented, but no clear statement by Manning.
On May 11, 1958, Manning presented a typed statement of her claims against Kaiser, with alleged offsets.
Two key items stand out in this case — the fire-retarding of the cellar ceiling and the procurement of a certificate of occupancy. These defendant Manning insists were to be Kaiser’s responsibility' and his failure to meet these two vital items resulted in alleged loss of ability to rent two apartments and still require substantial work to be done. In respect of these items, it is important to consider the testimony of the inspector of the Department of Buildings of the City of New York, Mr. Jack Linder. He was called by defendant and his testimony, given with a candor which commanded belief, vouchsafed that the plans filed assumed an already ‘ fire-retarded ceiling ’ ’ in the cellar. This would not be called for as work for Kaiser according to the plans as read by this witness. These plans clearly distinguished between work to be done, work partially done and the “ existing” condition before work to be begun. Apparently there were three distinct plans filed: original plans on August 21, 1957; amended plans on September 10, 1957, and further plans on December 5, 1957. On the last inspection date in February, 1959, the cellar ceiling was still without fire-retarding content and so not approved. On August 20, 1958 the City Department of Housing clearly pointed out that the ‘ ‘ cellar ceiling is not properly fire-retarded as called for on approved plans ”. Only one conclusion can be drawn from the evidence on these items — they were not the plaintiff Kaiser’s responsibility and there was no agreement by plaintiff to furnish either this ceiling (which the architect’s plans showed to be already “ fire-retarding ”) or to procure a certificate of occupancy, omitted from all written estimates after the very first one had been revised.
Many photographs of parts of the premises were received in evidence. In connection with a proper appraisal of their evidentiary weight it should be remembered that this was a building of some 50 to 75 years of age undergoing a thorough *996 renovation. The graphic effectiveness of these pictures could not, on the evidence presented, be charged against plaintiff.
A word remains to be said of other witnesses. Plaintiff Kaiser and defendant Manning each blamed the other. Neither one can be accepted untarnished. Yet the weight of the credible testimony and the written evidence weigh heavily in Kaiser’s favor. Defendant Manning’s husband, Gardner Frost, added little to her defense. Nor did witnesses Bowers, Glassberg, Bianco and Klein furnish any material support to the defense on the critical issues. Witness Doherty sought to help defendant’s case — but his testimony was so clearly' colored by his interest in holding his job and his lack of knowledge of the many interchanges between Kaiser and Manning, that it falls far short of acceptable proof. Plaintiff Kaiser, doing business as Keystone Construction Co., includes in its claim the amount of $2,650 due to Taormina and $1,600 taken over from Marine Acme. These are included in the total sum unpaid for all of plaintiff Kaiser’s work, of $13,954.33. This court believes that defendant Manning has an offset for unfinished work of Kaiser and subcontractors in the sum of $1,994.85. This amount for work done was paid by Mrs. Manning, which might reasonably have been expected of Kaiser and his workers. This leaves a balance unpaid of $11,959.48 for which judgment may be entered for plaintiff Evalyn Kaiser, doing business as Keystone Construction Co., against defendant Elizabeth M. Manning. Out of this sum defendant Taormina Construction Corp. is first to be paid the sum of $2,650 for the plastering work. The liens filed by Kaiser and Taormina are to remain until satisfied. Interest on the judgment to run from July 1, 1958.
Enter judgment as above provided. Motion to dismiss denied. Plaintiff’s motions addressed to counterclaim granted except as above provided.